UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
COUNTY OF SUFFOLK,

                Plaintiff,

- against -

GOLDEN FEATHER SMOKE SHOP, INC., KIMO
SMOKE SHOP, INC., SMOKE AND ROLLS INC.,
SHAWN MORRISON, KIANA MORRISON, in her
individual capacity, MONIQUE'S SMOKE SHOP,
ERNESTINE WATKINS, in her individual capacity,
JESSEY WATKINS, WAYNE HARRIS, PEACE PIPE
SMOKE SHOP, RODNEY MORRISON, Sr.,
CHARLOTTE MORRISON, in her individual capacity,
RED DOT & FEATHERS SMOKE SHOP, INC.,
RAYMOND HART, in his individual capacity,
SMOKING ARROW SMOKE SHOP, DENISE
PASCHALL, in her individual capacity, TONY D.
PHILLIPS, TDM DISCOUNT CIGARETTES, and
THOMASINA MACK, in her individual capacity,

                Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
09-CV-162 (CBA) (VMS)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 23 2016 ★
BROOKLYN OFFICE

**AMON, Chief United States District Judge:**

      The County of Suffolk initiated this action against individuals and businesses engaged in the sale of untaxed cigarettes on the Poospatuck Indian Reservation in Mastic, New York (the "Reservation"), where members of the Unkechauge Indian Nation (the "Tribe") reside. The County principally contends that defendants violated the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2341 et seq., and the Cigarette Marketing Standards Act ("CMSA"), N.Y. Tax L. § 483 et seq., by making retail sales of cigarettes without paying, prepaying, or otherwise collecting the applicable sales tax.

      On February 2, 2015, the County moved for summary judgment against Red Dot & Feathers Smoke Shop, Inc. and Raymond Hart (collectively, "Red Dot"). (See D.E. # 127.)

The Court granted that motion from the bench on March 20, 2015, with a written opinion to follow and the amount of Red Dot's civil penalties to be determined at a later hearing. (See Minute Entry & Order dated Mar. 20, 2015.) A hearing and written opinion have now become unnecessary. After lengthy back and forth, the County and Red Dot have settled the matter with respect to liability and damages without the need for a penalty hearing or further intervention by the Court. (See D.E. # 160.)

The County also moves for default judgment against Thomasina Mack, TDM Discount Cigarettes, Denise Paschal, Tony Phillips, Smoking Arrow Smoke Shop, Jesse Watkins, and Monique's Smoke Shop (collectively, the "Defaulting Defendants"). For the reasons stated below, the County's motion for default judgment is granted.

## BACKGROUND

The long-standing practice of selling unstamped cigarettes on the Reservation has been the subject of numerous litigations in this Court. See, e.g., Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation, No. 06-CV-1260 (KAM) (JMA) (E.D.N.Y. filed Mar. 20, 2006); City of New York v. Milhelm Attea & Bros., Inc., No. 06-CV-3620 (CBA) (VMS) (E.D.N.Y. filed July 24, 2006); City of New York v. Gutlove & Shirvint, Inc., No. 08-CV-1372 (CBA) (JMA) (E.D.N.Y. filed Apr. 4, 2008); City of New York v. Golden Feather Smoke Shop, Inc., No. 08-CV-3966 (CBA) (JMA) (E.D.N.Y. filed Sept. 29, 2008) (hereinafter the "City Case"); County of Suffolk v. Gutlove & Shirvint, Inc., 09-CV-2723 (CBA) (VMS) (E.D.N.Y. filed June 25, 2009); see also United States v. Morrison, No. 04-CR-699 (DRH) (AKT) (E.D.N.Y. filed Aug. 3, 2004) (criminal indictment of Rodney Morrison for RICO conspiracy to sell untaxed cigarettes through the Peace Pipe Smoke Shop). The Court assumes the parties' familiarity with the facts

2

surrounding the sales at issue here and incorporates by reference the background and statement of facts set out in two of its prior opinions specifically discussing the role of the defendants at issue here. See City of New York v. Golden Feather Smoke Shop, Inc., No. 08-CV-3966 (CBA), 2009 WL 2612345, at *14–16 (E.D.N.Y. Aug. 25, 2009) ("Golden Feather I"); City of New York v. Golden Feather Smoke Shop, Inc., No. 08-CV-3966 (CBA) (JMA), 2013 WL 3187049, at *5 (E.D.N.Y. June 20, 2013) ("Golden Feather II"). Accordingly, the Court summarizes only the facts and background information necessary to decide the pending motions.

New York State imposes both a sales tax and an excise tax on all cigarettes sold within the State, except for those that New York is "without power" to tax. See N.Y. Tax L. §§ 471 (excise tax), 1105 (sales tax). Due to the sovereign status of Native American tribes, New York (and the federal government) lack the power to tax cigarettes sold on a reservation to tribal members for their own consumption. Dep't of Taxation & Fin. of N.Y. v. Milhelm Attea & Bros., Inc., 512 U.S. 61, 64 (1994). But sales to non-Native buyers are subject to taxation, even if they occur on a reservation and are made by tribal members. Id.

Section 1105 of the Tax Law imposes a sales tax on "every retail sale of tangible personal property" subject to certain exclusions not applicable here. N.Y. Tax L. § 1105(a).

The Tax Law defines a "retail sale" as "[a] sale of tangible personal property to any person for any purpose, other than [] for resale." Id. § 1101(b)(4). As such, the New York Court of Appeals has concluded that the Tax Law "creates an exemption from sales . . . taxes for purchases made for resale." Echostar Satellite Corp. v. Tax Appeals Trib., 20 N.Y.3d 286, 290 (2012). To prevent tax evasion from masquerading as resale transactions, the Tax Law presumes that any sale is for retail unless the taxpayer properly establishes otherwise. See N.Y.

Tax L. § 1132(c)(1). Indeed, the Tax Law makes plain that a "sale shall be deemed a taxable sale at retail" unless the seller receives a resale certificate from the purchaser that complies with requirements set forth by the state tax commission. See id.; N.Y. Comp. Codes R. & Regs. tit. 20, § 526.6(c)(2) ("A sale for resale will be recognized only if the vendor receives a properly completed resale certificate."); see also Savemart, Inc. v. State Tax Comm'n, 482 N.Y.S.2d 150, 152 (3d Dep't 1984) (holding that where "petitioners did not receive a resale certificate or any other sort of relevant documentation . . . the sale must be deemed a taxable sale at retail").

Although commonly referred to as a single tax, at least three distinct taxes are levied on retail sales in New York. First, New York State imposes a 4% statewide sales tax. See N.Y. Tax L. § 1105. Second, the Tax Law authorizes municipalities to adopt their own sales tax by local law, ordinance, or resolution. Id. § 1210. Suffolk County is authorized to collect a local sales tax of 4.25%. See id. §§ 1210(14), 1210-A(a). Finally, the State imposes an additional 0.375% tax on sales in New York City and the surrounding counties to help fund the Metropolitan Transportation Authority. Id. § 1109; N.Y. Pub. Auth. L. § 1262. Thus, retail sales in Suffolk County are ultimately subject to a combined sales tax of 8.625%.

Generally, the New York Tax Law requires retailers to collect sales tax from the purchaser at the time of sale. See N.Y. Tax L. §§ 1131(1), 1132(a)(1). Recognizing, however, the risk of widespread evasion of the sales and other applicable taxes by cash purchasers of cigarettes, the Tax Law requires that a portion of those taxes be paid prior to the sale through a system of tax stamps. See id. §§ 1103, 1112(d), 471-e. State-licensed "stamping agents," usually wholesalers, buy cigarettes from manufacturers and then prepay a portion of the sales tax

by purchasing tax stamps from the State and affixing them to the cigarette packages.[1] See id. The stamping agents build that portion of the sales tax into the cost of the cigarettes and pass it on to retailers, such as defendants, who in turn charge it to consumers. See id. § 471(2); In re N.Y. Assoc. of Convenience Stores v. Urbach, 92 N.Y.2d 204, 209 (1998).

The remainder of the sales tax is then collected when the cigarettes are sold to a retail customer. See N.Y. Tax L. §§ 1103(b), 1105, 1110, 1131(1), 1132(a)(1). The retailer collects the full amount of the sales tax—8.625% in Suffolk County—from the customer and remits that amount to the State. See id. The State then credits the retailer for the 36 cents of sales tax that were prepaid through the stamping system. See id. § 1103(d).

After receiving the sales tax from the retailer, the State Comptroller allocates the funds collected from each of the three component taxes. See id. §§ 171-a, 1148. The taxes collected for the Metropolitan Transportation Authority are deposited in the Mass Transportation Operating Assistance Fund. See id. §§ 171-a(2), 1109(d)(2). The portion traceable to the State's own 4% sales tax are placed in the State Treasury. See id. §§ 171-a, 1148. And finally, the amounts generated by local taxes are remitted to the appropriate municipal entity. See id. §§ 171-a, 1148; N.Y. Fin. L. §§ 92-d, 92-r; (see also O'Donnell Decl. Ex. L, at 21:13–22:17).

---

[1] During 2008, stamping agents were required to prepay 36 cents of the sales tax for each pack of cigarettes. (See D.E. # 158-1, Declaration of Megan O'Donnell in Support of Plaintiff's Motion for Default Judgment ("O'Donnell Decl."), Ex. N at 1.)

## DISCUSSION

The County moved for default judgment on its CCTA and CMSA claims against each of the Defaulting Defendants.[2] The County does not seek damages on those counts and instead requests only an award of civil penalties pursuant to the CCTA. (See D.E. # 127-16 at 1.)

Federal Rule of Civil Procedure 55 "provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011) (quoting New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005)).

### A. Entry of Default

Default is properly entered against a defendant who has "failed to plead or otherwise defend" an action. Fed. R. Civ. P. 55(a). Even where a defendant has filed a timely answer or moved to dismiss, a default may be entered if that defendant "affirmatively signaled . . . its intention to cease participating in its own defense" or "withdrew its counsel without retaining a substitute." Mickalis Pawn Shop, 645 F.3d at 130 (citations omitted).

The County served Monique's Smoke Shop, Jesse Watkins, Smoking Arrow Smoke Shop, Denise Paschall, and Thomasina Mack on March 13, 2009. (D.E. # 2.) TDM Discount Cigarettes was served on March 25, 2009. (D.E. # 6.) Shortly thereafter, on April 3, 2009, James Simermeyer filed a motion to dismiss on behalf of Monique's Smoke Shop, Smoking Arrow Smoke Shop, Denise Paschall, Thomasina Mack, and TDM Discount Cigarettes. (D.E. # 8.) Simermeyer withdrew that motion on December 18, 2009, and subsequently filed answers

---

[2] Although the complaint initially included an additional count against each defendant for aiding and abetting violations of the CCTA, the County subsequently withdrew that claim. (See D.E. # 127-16 at 1; D.E. # 75 at 1.)

on behalf of those defendants on January 18, 2010. (D.E. # 26–28.) On January 4, 2013, Simermeyer informed the Court that Denise Paschall and Smoking Arrow Smoke Shop had discharged him and retained other counsel. (D.E. # 79; see also D.E. dated Mar. 27, 2012 (noting that Peter Kaiteris purported to represent those defendants).) Simermeyer then moved to withdraw entirely from this litigation on May 21, 2013, claiming that he had been discharged by Thomasina Mack and TDM Discount Cigarettes and could no longer effectively represent Monique's Smoke Shop. (D.E. # 86.) The magistrate judge granted that motion on June 6, 2013, and instructed each of those defendants to appear (either through counsel or pro se) at a July 22, 2013, status conference. (Minute Entry dated June 6, 2013.) Despite that instruction, none of the Defaulting Defendants previously represented by Simermeyer attended that status conference or participated in any subsequent proceedings.[3] (Minute Entry dated July 22, 2013.)

Howard Leader appeared on behalf of Jesse Watkins on August 3, 2009, and filed an answer on December 3, 2009. (D.E. # 13, 24.) On January 6, 2012, Leader sought to withdraw as counsel due to both a breakdown in the attorney–client relationship and Jesse Watkins's refusal to pay legal fees. (D.E. # 68.) Because Jesse Watkins offered no objection to that request, the Court granted Leader's motion on July 23, 2012. (D.E. # 70, 77.) Although Jesse Watkins participated in three subsequent telephone conferences before the magistrate judge, his pro se appearances ceased after the December 5, 2013, conference. (See Minute Entries dated Aug. 27, 2013, Nov. 10, 2013, and Dec. 5, 2013.) As of this date, it has been more than two years since he participated in this matter.

---

[3] One of Simermeyer's former clients, Ernestine Watkins, appeared pro se at a number of subsequent conferences before the magistrate judge. However, as the County voluntarily dismissed its claims against her, (D.E. # 133), Ernestine Watkins is no longer a party to this action.

7

The remaining Defaulting Defendant—Tony Phillips—was served on April 30, 2009. (D.E. # 7.) But unlike the other defendants, Phillips never responded to the complaint nor did he ever appear in this action.

Based on the foregoing, the Court concluded that each of the Defaulting Defendants had "failed to plead or otherwise defend" the action and entered default against them on April 21, 2015. (D.E. # 146 (quoting Fed. R. Civ. P. 55(a)).) The Court then directed the County to serve a copy of its motion for default judgment on each of the Defaulting Defendants and provided an opportunity for those defendants to oppose that motion. (D.E. dated May 22, 2015.) On May 22, 2015, the County served its motion in accordance with that Order. (D.E. dated May 22, 2015.) The Order mailed to Tony Phillips was subsequently returned as undeliverable. (D.E. # 155.) Because none of the Defaulting Defendants objected to that motion within the time allotted, the County filed its unopposed motion on July 1, 2015. (D.E. # 156.)

### B. Liability

"[I]n civil cases, where a party fails to respond [or otherwise defend the action], after notice the court is ordinarily justified in entering a judgment against the defaulting party." Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984). Although a defendant's default is an admission of all well-pleaded allegations in the complaint pertaining to liability, see Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), the Court must nevertheless determine whether the allegations state a claim upon which relief may be granted, see Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). Accordingly, a default judgment is entered only if the plaintiff "establish[es] on the law it is entitled to the relief it seeks, given the facts as established by the default." Trs. of Mosaic & Terrazzo Welfare,

8

Pension, Annuity & Vacation Funds v. Suffolk Tile & Terrazzo, Inc., No. 10-CV-5804 (CBA) (SMG), 2011 WL 5025318, at *1 (E.D.N.Y. Sept. 9, 2011) (citation omitted), adopted by 2011 WL 5027065 (E.D.N.Y. Oct. 21, 2011).

The complaint alleges that a number of smoke shops on the Reservation sold large quantities of untaxed and unstamped cigarettes to non-Native buyers. (Compl. ¶¶ 15–25.) Monique's Smoke Shop—located at 112A Poospatuck Lane—was owned and operated by Ernestine and Jesse Watkins. (Id. ¶¶ 15–17.) Around the corner from Monique's was TDM Discount Cigarettes, which was owned and operated by Thomasina Mack. (Id. ¶¶ 24–25.) Mack also owned and operated Shine Smokes, which was located a few doors down Poospatuck Lane. (Id. ¶ 25.) Denise Paschall owned and operated two other smoke shops on Poospatuck Lane—Smoking Arrow Smoke Shop and Dancing Arrow Smoke Shop. (Id. ¶¶ 21–22.) Tony Phillips operated Smoking Arrow together with Paschall. (Id. ¶ 23.) The County alleges that each of those individuals and business entities "ship[ped], transport[ed], receive[d], possess[ed], s[old], distribute[d], or purchase[d] unstamped cigarettes in both face-to-face and remote transactions." (Id. ¶¶ 15–25.)

As previously noted, New York law requires cigarette wholesalers and retailers to evince their prepayment of a portion of the sales and excise taxes by affixing a tax stamp to each pack of cigarettes sold, unless the sales are to Native Americans for personal consumption. (Id. ¶¶ 3–5.) The County alleges that each of the Defaulting Defendants sold large quantities of unstamped cigarettes to non-Native buyers and failed to otherwise collect the applicable taxes. (Id. ¶¶ 2–6, 33–36.) Because those defendants dealt solely in unstamped (and therefore untaxed) cigarettes, they were "able to sell cigarettes at a substantial discount to the sales of

cigarettes by non-[Native] retailers who dutifully comply with the law and pay the appropriate excise and sales taxes." (Id. ¶ 40.) Moreover, according to the complaint, those defendants widely advertised that their cigarettes were cheaper than their competitors' because theirs were "tax-free." (Id. ¶¶ 38, 42.) These untaxed sales result in "a loss in State tax revenue of hundreds of millions of dollars annually," "a portion of which would be designated for the County of Suffolk" as discussed above. (Id. ¶ 6; see also id. ¶¶ 45, 51, 61.)

The Court has already held that the allegations in the complaint sufficiently plead violations of the CCTA and the CMSA. (See Jan. 11, 2013 Hrg. Tr. at 41:23–42:1 (denying defendants' motion for summary judgment on that basis); D.E. # 81 (same).) As such allegations suffice to plead both claims, the Court grants the County's motion for a default judgment against each of the Defaulting Defendants.[4] See City of New York v. Golden Feather Smoke Shop, Inc., 2011 WL 6945758, at *3–6 (granting a default judgment against Tony Phillips after concluding that similar allegations in the City Case sufficiently alleged violations of the CCTA and the CMSA).

### C. Damages

Once a default judgment is entered, damages must then "be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." Greyhound Exhibitgroup, 973 F.2d at 158. But "it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the

---

[4] Although the County urges the Court to look outside the four corners of the complaint in assessing liability, the law is clear that in evaluating a default judgment motion the Court is "limited to the non-conclusory, factual allegations in the . . . [c]omplaint." Johannes Baumgartner Wirtschafts-Und Vermogensberatung GmbH v. Salzman, 969 F. Supp. 2d 278, 287–88 (E.D.N.Y. 2013); accord Klimchak v. Cardrona, Inc., No. 09-CV-4311 (MKB) (ARL), 2014 WL 3778964, at *5 (E.D.N.Y. July 31, 2014). Thus, the Court disregards the extraneous (and unnecessary) evidence presented by the County at the liability stage.

default judgment." Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989) (finding that the district court properly "relied upon detailed affidavits and documentary evidence, supplemented by the District Judge's personal knowledge of the record" to determine damages).

Based on the poor recordkeeping employed by the Defaulting Defendants, the County seeks only civil penalties under the CCTA, rather than an award of damages. (See D.E. # 127-16.) Civil penalties both serve "as a rough form of liquidated damages," United States v. Ursery, 518 U.S. 267, 283–84 (1996) (citation omitted), and work in some measure "to punish culpable individuals," and not "simply to extract compensation or restore the status quo," Tull v. United States, 481 U.S. 412, 422 (1987); accord Friends of the Earth, Inc. v. Laidlaw Envir. Servs. (TOC), Inc., 528 U.S. 167, 186 (2000) (finding civil penalties "encourage defendants to discontinue current violations and deter them from committing future ones"). As such, civil penalties are an appropriate form of relief for CCTA violations, particularly where the defendants frustrate plaintiff's ability to seek actual damages by failing to keep adequate records.

Because the CCTA "does not specify a penalty amount for violations of its core prohibition on transacting in contraband cigarettes," this Court has looked in previous cases to the analogous penalty provisions of the Prevent All Cigarette Trafficking ("PACT") Act for guidance. Golden Feather II, 2013 WL 3187049, at *38 (quoting Milhelm Attea, 2012 WL 3579568, at *27). Under the relevant provisions of the PACT Act, the Court may "impose a penalty of up to 2% of each defendant's gross sales of unstamped cigarettes for the year preceding a chosen violation date." Id. That calculation provides the "starting point for an award," which the Court then adjusts using "traditional factors, including the good or bad faith of

11

the defendants, the injury to the public, and the defendants' ability to pay[,] taking into account their gross and net profits from their business of selling unstamped cigarettes." Id. (internal quotation marks omitted).

The County argues that the appropriate penalty here is 2% of contraband cigarette sales made by each of the Defaulting Defendants for the year 2008. Based on a "conservative" estimate of $25 per carton in revenue, the County calculates the following penalty amounts:

| Defendants | Cartons Sold | Revenue | Penalty |
| --- | --- | --- | --- |
| Thomasina Mack, TDM Discount Cigarettes | 453,182 | $11,329,550 | $226,591 |
| Denise Paschall, Tony Phillips, Smoking Arrow Smoke Shop | 1,400,000 | $35,000,000 | $700,000 |
| Jesse Watkins, Monique's Smoke Shop | 475,000 | $11,875,000 | $237,500 |

(See D.E. # 156-25 at 26–28.) Those calculations, however, are insufficient to support the awards of civil penalties that the County seeks. First, Golden Feather II makes plain that such a calculation provides merely the starting point to the penalty analysis, not the bottom-line award. 2013 WL 3187049, at *38–39. To the contrary, after doing such an analysis the Court must consider the remaining factors relevant to penalties before making an award. Id.

Second, the County fails to offset its proposed penalties by any amounts already paid by the relevant defendants in the City Case or explain why such offsets are not required. Third, it improperly "lumps together the civil penalties requested" for several defendants, rather than attempting to apportion amounts that are directly attributable to a particular defendant. Id. at *39 (denying civil penalties that the City requested for a group of defendants and directing it to clarify the monetary relief sought from each particular defendant).

12

Accordingly, the Court concludes that the current briefing is insufficient to determine penalties properly. To the extent the County wishes to obtain civil penalties from the Defaulting Defendants, it must: (1) address the remaining factors identified in setting a proper penalty amount, (2) clarify the monetary relief it seeks from each particular defendant, and (3) explain why any amounts that the defendants paid in the City Case need not be deducted from the penalties sought here.

## CONCLUSION

For the reasons stated above, the Court grants the County's motion for default judgment against each of the Defaulting Defendants. As the Court is unable to determine the appropriate amount of civil penalties against each of the Defaulting Defendants, the County is directed to file a supplemental brief related to its request for an award of civil penalties against those defendants within 30 days of this Order. That submission may not exceed 10 pages.

SO ORDERED.

Dated: March 22, 2016
Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
Chief United States District Judge