UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
COUNTY OF SUFFOLK,

                Plaintiff,

- against -

GOLDEN FEATHER SMOKE SHOP, INC., KIMO
SMOKE SHOP, INC., SMOKE AND ROLLS INC.,
SHAWN MORRISON, KIANA MORRISON, in her
individual capacity, MONIQUE'S SMOKE SHOP,
ERNESTINE WATKINS, in her individual capacity,
JESSE WATKINS, WAYNE HARRIS, PEACE PIPE
SMOKE SHOP, RODNEY MORRISON, Sr.,
CHARLOTTE MORRISON, in her individual capacity,
RED DOT & FEATHERS SMOKE SHOP, INC.,
RAYMOND HART, in his individual capacity,
SMOKING ARROW SMOKE SHOP, DENISE
PASCHALL, in her individual capacity, TONY D.
PHILLIPS, TDM DISCOUNT CIGARETTES, and
THOMASINA MACK, in her individual capacity,

                Defendants.
------------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
09-CV-162 (CBA) (VMS)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 17 2016 ★
BROOKLYN OFFICE

**AMON, United States District Judge:**

    The County of Suffolk initiated this action against individuals and businesses engaged in the sale of untaxed cigarettes in violation of the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2341 et seq., and the Cigarette Marketing Standards Act ("CMSA"), N.Y. Tax L. § 483 et seq. In a March 23, 2016, Memorandum and Order (the "Default Judgement M&O"), the Court granted default judgment against defendants Thomasina Mack, TDM Discount Cigarettes, Denise Paschall, Tony Phillips, Smoking Arrow Smoke Shop, Jesse Watkins, and Monique's Smoke Shop (collectively, the "Defaulting Defendants"). (See D.E. # 161.) The Court held, however, that the County's penalty calculations were insufficient to support the civil penalties it sought. (See id. at 12.) The Court directed the County to file a supplemental brief

addressing the deficiencies, (see id. at 13), which the County did, (see D.E. # 166 ("Supp. Br.")). No Defaulting Defendant filed a response to this supplemental submission. For the reasons below, the Court now awards the requested civil penalties to the County.

## DISCUSSION

The County seeks only civil penalties under the CCTA, not an award of damages. Because the CCTA does not specify a penalty amount for violations of its core prohibition on transacting in contraband cigarettes, this Court looks to the analogous penalty provisions of the Prevent All Cigarette Trafficking ("PACT") Act. See, e.g., City of New York v. Golden Feather Smoke Shop, Inc., No. 08-CV-3966 (CBA) (JMA), 2013 WL 3187049 (E.D.N.Y. filed Sept. 29, 2008) (hereinafter the "City Case"). Under the relevant PACT Act provisions, the Court may "impose a penalty of up to 2% of each defendant's gross sales of unstamped cigarettes for the year preceding a chosen violation date." Id. at *5. That calculation provides the "starting point for an award," which the Court then adjusts using "traditional factors, including the good or bad faith of the defendants, the injury to the public, and the defendants' ability to pay[,] taking into account their gross and net profits from their business of selling unstamped cigarettes." Id. (internal quotation marks omitted).

In its motion for default judgment, the County argued that the appropriate penalty is 2% of contraband cigarette sales made by each of the Defaulting Defendants for the year 2008. Estimating $25 per carton in revenue, the County calculated the following penalty amounts:

| Defendants | Cartons | Revenue | Penalty |
|---|---|---|---|
| Thomasina Mack, TDM Discount Cigarettes | 453,182 | $11,329,550 | $226,591 |
| Denise Paschall, Tony Phillips, Smoking Arrow Smoke Shop | 1,400,000 | $35,000,000 | $700,000 |
| Jesse Watkins, Monique's Smoke Shop | 475,000 | $11,875,000 | $237,500 |

2

But as the Court explained in the Default Judgment M&O, those calculations did not (1) address the "traditional factors" relevant to the penalty amount, (2) specify the monetary relief sought from each particular defendant, or (3) explain why any amounts that the Defaulting Defendants paid in the City Case need not be deducted from the penalties sought here. The County now remedies those deficiencies with its supplemental briefing.

First, the County addresses the traditional factors the Court considers when determining the proper amount of civil penalties, specifically good or bad faith, injury to the public, and ability to pay. The County first highlights the Defaulting Defendants' bad faith and injury to the public. It emphasizes that the Defaulting Defendants "caused substantial loss to multiple victims" through their "recurrent and not isolated" conduct by "operat[ing] an illicit business, for years, that stripped the City, County, and State of tax revenue." (Supp. Br. at 3; see also id. at 5–6 (Mack and TDM); id. at 7–8 (Paschall, Smoking Arrow, Phillips); id. at 9–10 (Watkins and Monique's Smoke Shop).) As to ability to pay, the County notes that the Defaulting Defendants' poor recordkeeping inhibits an evaluation of their net and gross profits. (Id. at 4.) The Defaulting Defendants, the County urges, should bear the burden of this uncertainty. (See id.) Further, the County argues that the 2% gross-sale penalty it seeks is far less than the "per violation" measure also provided for in the PACT Act—indeed many millions of dollars less, given the number of violations. (Id. at 4–5.) Finally, the County states that "it is logical to conclude [Defaulting Defendants] have the ability to pay" given the "extraordinarily lucrative [illicit] business in which [they] engaged." (Id. at 5.) The County details how lucrative these enterprises were for each set of Defaulting Defendants. (See id. at 6 (Mack and TDM, with gross sales of $45 million between 2005 and 2008); id. at 7–8 (Paschall, Smoking Arrow, and Phillips, with gross profits of $1 million per week from approximately 2007 to 2009); id. at 9–10 (Watkins and Monique's Smoke Shop, with $11 million

in gross revenue in both 2006 and 2007).) Based on these arguments, the Court is persuaded that the traditional factors weigh against adjusting the amount of civil penalties the County seeks.

Second, the County clarifies that it seeks the specified amounts against the cigarette business and its owner and operator jointly and severally. (Id. at 1.) Analogizing to disgorgement awards, the County argues that "the court has the discretion to find joint and several liability when two or more defendants have collaborated in the illegal conduct." S.E.C. v. Opulentica, LLC, 479 F. Supp. 2d 319, 330 (S.D.N.Y. 2007). According to the County, the business and its operator are "collaborating or closely related parties" on whom it is proper to "impose joint and several liability for combined profits." (Supp. Br. at 1 (quoting U.S. S.E.C. v. Syndicated Food Serv. Int'l, Inc., No. 04-CV-1303 (NGG) (VMS), 2014 WL 2884578, at *11 (E.D.N.Y. Feb. 14, 2014), report and recommendation adopted, 2014 WL 1311442 (E.D.N.Y. Mar. 28, 2014)).)

The Court agrees that holding the cigarette business and its operator jointly and severally liable for the civil penalties is appropriate here. The Court granted default judgment against the Defaulting Defendants based on allegations that the individuals were the owners and operators of the entities and that "each of those individuals and business entities" had sold unstamped cigarettes. (See Default Judgment M&O at 9 (citing Compl. ¶¶ 15–25).) These allegations support joint and several liability, and the default constitutes an admission of them, see Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Additionally, imposing joint and several liability supports the purpose of civil penalties, which both serve "as a rough form of liquidated damages," United States v. Ursery, 518 U.S. 267, 283–84 (1996) (citation omitted), and work in some measure "to punish culpable individuals," and not "simply to extract compensation or restore the status quo," Tull v. United States, 481 U.S. 412, 422 (1987); accord

4

Johnson v. S.E.C., 87 F.3d 484, 492 (D.C. Cir. 1996) ("[T]he ordinary, contemporary, common meaning of the word 'penalty,' [is] a sanction imposed by the government for unlawful or proscribed conduct which goes beyond remedying the damage caused to the harmed party."). Finally, the CCTA's remedies provision provides not only for civil penalties, but also for "any other appropriate relief for violations of this chapter from any person (or by any person controlling such person)," 18 U.S.C. § 2346—and does not contain any statutory language limiting the amount of civil penalties the Court may impose, cf. S.E.C. v. Pentagon Capital Mgmt. PLC, 725 F.3d 279, 288 (2d Cir. 2013) (finding that the district court could not impose joint and several liability because the relevant statute, 15 U.S.C. § 77t(d)(2), limited the civil penalty to the "gross amount of pecuniary gain to such defendant"). The Court therefore concludes that the business entity and the owner or operator shall be jointly and severally liable for the civil penalties imposed.

Third, the County explains why the civil penalties should not be offset by any amounts awarded in the City Case. The County points out that the statutes at issue provide for multiple forms of relief. (Supp. Br. at 2.) The CCTA provides for "any other appropriate relief . . . including civil penalties, money damages, and injunctive or other equitable relief." (See id. (quoting 18 U.S.C. § 2346) (emphasis added).) The PACT Act provides for similar multiple forms of relief. (See id. (citing 15 U.S.C. § 378(c)(1)(A)).) Additionally, the County implies that an offset would be an equitable defense, and such equitable defenses do not apply to plaintiffs like the County acting in law enforcement capacities to seek statutorily authorized civil penalties. (See id. at 3 (citing State of New York v. United Parcel Serv., Inc., -- F. Supp. 3d --, 2016 WL 502042, at *13 (S.D.N.Y. Feb. 8, 2016) (collecting cases indicating that equitable defenses do not apply in such circumstances and therefore holding that a mitigation defense is not available for CCTA and PACT Act claims)).) See also State of N.Y. v. Riley, 53 F.3d 520, 522 (2d Cir. 1995)

("The doctrine of equitable offset, as the name itself reflects, embodies concepts of equity . . . ."). Lastly, the County points out that Mack and TDM were subject only to damages in the City Case, (see Supp. Br. at 6); Paschall, Smoking Arrow, Watkins, and Monique's Smoke Shop settled the City Case, (id. at 8); and Phillips was assessed a civil penalty for only one year's sales and has yet to appear or pay, (id.). None of the Defaulting Defendants, therefore, has paid a civil penalty to offset the penalties awarded here. The Court finds these arguments together persuasive and therefore awards civil penalties without any offset.

## CONCLUSION

For the reasons stated above, the Court awards the County civil penalties against the Defaulting Defendants in the following amounts: $226,591 jointly and severally against Thomasina Mack and TDM Discount Cigarettes; $700,000 jointly and severally against Denise Paschall, Tony Phillips, and Smoking Arrow Smoke Shop; and $237,500 jointly and severally against Jesse Watkins and Monique's Smoke Shop.

This Memorandum and Order resolves the final outstanding issue in this action. The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.

Dated: August 16, 2016
      Brooklyn, New York

s/Carol Bagley Amon

Carol Bagley Amon
United States District Judge